UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO VILLESCAS, | No. 2:15-cv-1861 TLN KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| RAFAEL MIRANDA, et al., | |
| Defendants. | |

Introduction

  Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's motion for injunctive relief (ECF No. 11) and plaintiff's motion to supplement the motion for injunctive relief (ECF No. 17). Plaintiff alleges that he has received inadequate medical care. For the following reasons, these motions should be denied.

Legal Standard for Injunctive Relief

  The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). The propriety of a request for injunctive relief

hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits. See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010). As noted above, in addition to demonstrating that he will suffer irreparable harm if the court fails to grant the preliminary injunction, plaintiff must show a "fair chance of success on the merits" of his claim. Sports Form, Inc. v. United Press International, Inc., 686 F.2d 750, 754 (9th Cir. 1982) (internal citation omitted). Implicit in this required showing is that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial. In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Legal Standard for Claim Alleging Inadequate Medical Care

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett, 439 F.3d at 1096. Deliberate indifference may be shown by the denial,

Case 2:15-cv-01861-TLN-DB   Document 18   Filed 10/30/15   Page 3 of 8

delay, or intentional interference with medical treatment, or by the way in which medical care is provided. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

It is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06); see also Toguchi, 391 F.3d at 1057.

Analysis

On September 2, 2015, plaintiff filed a complaint alleging that he had received inadequate medical care at High Desert State Prison ("HDSP"). (ECF No. 1.) On October 8, 2015, plaintiff filed the pending motion for injunctive relief. (ECF No. 11.) On October 9, 2015, the undersigned ordered service of his complaint on defendants. (ECF No. 12.)

Although no defendants had yet appeared in this action, on October 9, 2015, the undersigned also ordered Supervising Deputy Attorney General Monica Anderson to file a response to plaintiff's motion for injunctive relief. (ECF No. 14.) On October 22, 2015, plaintiff filed further briefing in support of his motion for injunctive relief. (ECF No. 17.) On October 23, 2015, the Office of the Attorney General filed an opposition to plaintiff's motion for injunctive relief. (ECF No. 16.)

////

The undersigned herein sets forth plaintiff's allegations in support of his request for injunctive relief.

Plaintiff is a T12 paraplegic with chronic decubitus ulcers. (ECF No. 1 at 4; 11 at 23.) The instant action proceeds on plaintiff's Eighth Amendment claims that defendants have intentionally denied, and interfered with plaintiff's medical care by, *inter alia*, depriving him of his air mattress, Lumbar Sacral Orthosis ("LSO"), and narcotic pain medications, despite prior medical orders from pain management specialists and neurosurgeons. Prior to his transfer to High Desert State Prison ("HDSP") on August 29, 2013, plaintiff claims that he was "almost continuously prescribed" pain medication for his chronic and substantial pain, including Fentanyl patches, Vicodin, and Morphine. (ECF No. 1 at 4.) On August 29, 2013, plaintiff alleges that defendant Miranda "falsely documented 'no medical need' for Methadone and 'not medically necessary' for Lumbar Corset [LSO]" without examining plaintiff or his medical records. (Id. at 5-6.)

In the motion for injunctive relief, plaintiff claims he continues to suffer severe pain because of the denial of his lumbar orthosis and proper pain medications as well as not having his personal, custom-fitted wheelchair. (ECF No. 11 at 3.) In addition, plaintiff contends that he was recently told that because he "made all CTC custody and medical staff extremely mad [at him] for complaining," the yogurt and Boost supplements will be rescinded as not medically needed. (Id. at 2.) Plaintiff states he was told his custom wheelchair will not be returned because of "contract issues and replacement parts being too expensive, as a result of plaintiff filing [a request for] an accommodation." (Id. at 2.) Plaintiff seeks return of his custom wheelchair, a prescription and return of his LOS, examination by a pain management specialist and medications or treatment as recommended, and immediate transfer to a facility in Los Angeles.

In his further briefing filed in support of the pending motion, plaintiff requests immediate return of his personal wheelchair and to be transferred to an "OHU or CTC" near Los Angeles or Sacramento. (ECF No. 17.)

In the opposition, the Office of the Attorney General provided the declaration of Dr. Greenleaf, plaintiff's primary treating physician. (ECF No. 16-1.) Dr. Greenleaf states, in

relevant part,

>2. I have been employed by the California Department of Corrections and Rehabilitation (CDCR) since 2008. I currently work as a physician and surgeon at High Desert State Prison (HDSP).
>
>3. I am inmate Alberto Villescas' (P-16275) primary treating physician. This declaration is based on my education and training as a physician, my review of Mr. Villescas' Unit Health Record (UHR), and my involvement with Mr. Villescas' care and treating during his time at HDSP.
>
>4. I generally meet with Mr. Villescas approximately two to three times per week, and more often as his treatment dictates.
>
>5. Mr. Villescas arrived at HDSP on August 29, 2013. He was previously housed at Pleasant Valley State Prison.
>
>6. Mr. Villescas is currently being treated at HDSP in the Correctional Treatment Center (CTC). He was admitted to the CTC on October 7, 2014, due to recurrent decubitis ulcers (bed sores) in his sacral area, located at the base of his spine.
>
>7. The CTC at HDSP is designed to provide for the health care needs of inmates. The CTC can accommodate inmates who qualify as disabled under the Americans with Disabilities Act (ADA). Staff members in the CTC include doctors and registered nurses, as well as other clinical and administrative staff.
>
>8. Mr. Villescas is paraplegic and requires a wheelchair, ankle braces, and orthotic boots. Because he has lost sensation in his lower extremities, he also requires frequent monitoring to prevent bed sores.
>
>9. While housed in the CTC, Mr. Villescas has access to a treatment team that includes myself, other licensed physicians, and registered nurses. He receives frequent nursing care to monitor and manage any skin breakdown, and has been prescribed daily showers.
>
>10. Mr. Villescas' room in the CTC is wheelchair-accessible and has a shower that is outfitted to meet his needs and minimize sores. A trapeze device is attached to his bed. He may use the trapeze to move into and out of his bed using his upper body. Mr. Villescas has been issued an airflow mattress for more than a year.
>
>11. Mr. Villescas has been provided with a Jetstream Pro Back and a transfer board. The Jetsteam Pro Back is a contoured support cushion that attaches to Mr. Villescas' wheelchair to reduce pressure on his sacral area, and the transfer board is used to avoid abrasions to the sacral area when he moves into and out of his wheelchair.
>
>12. Mr. Villescas informed me that he experiences upper-back pain

5

with some regularity.  Accordingly, I have prescribed him medication and implemented a treatment regimen that includes acetaminophen and morphine for pain, which is administered on an as-needed basis.  In my medical opinion, Mr. Villescas does not have a current need for methadone, and his pain is being appropriately managed and treated.

13.  When I examined Mr. Villescas on October 19, 2015, he appeared stable and in good health. He did not request additional pain medication.

14.  In my medical opinion, Mr. Villescas does not have a current medical need for a lumbar corset.  For individuals with Mr. Villescas' condition, such devices expose patients to the risk of additional muscle atrophy.

15.  Mr. Villescas has been issued one pair of orthotic boots.  In the past, he expressed to me that he wanted an extra pair of boots so that his boots did not wear out so quickly, but in my judgment, there is no medical need for a second pair of boots.  When I meet with Mr. Villescas, he did not indicate that his current pair was in need of replacement.

16.  On September 1, 2015, Mr. Villescas was issued a medical order for yogurt and Boost, a nutritional supplement.  That order was renewed for thirty days on September 25, 2015.

17.  Mr. Villescas has been placed on a waitlist for transfer to an Outpatient Housing Unit since approximately October 6, 2014.  I do not have the authority to expedite his transfer.

18.  In my opinion, Mr. Villescas' medical needs are being appropriately addressed in the CTC.  His treatment team is actively monitoring his care and responding to his treatment needs.

(Id. at 1-3.)

With regard to plaintiff's claim that he is being denied access to his wheelchair, the Officer of the Attorney General provided the declaration of HDSP Materials and Stores Specialist II, H. Mueller.  (ECF No. 16-2.)  H. Mueller states, in relevant part,

2.  In my capacity as M & SS II, I facilitate the receipt, storage, issuance, and shipping of a variety of medical supplies ordered for inmates at HDSP, as well as repairs of durable medical equipment, such as wheelchairs.  This declaration is based on my involvement with the recent repair order for the personal wheelchair of inmate Villescas (P-16275).

3.  CDCR has contracted with MultiMedical Systems (MultiMedical), a service contractor, to provide wheelchair repair.

4.  In August of 2015, my office received a repair request form

    from Mr. Villescas for a T-Lite ZRA wheelchair. This is Mr. Villescas' personal wheelchair, and was not issued by CDCR. The wheelchair was sent to MultiMedical for repairs on September 1, 2015. In the interim, while awaiting return of his chair, Mr. Villescas was loaned a standard wheelchair.

    5. MultiMedical has evaluated the wheelchair and indicated that the chair's axles, tires, and brakes need repair in order to make the chair safe for operation.

    6. It is estimated that the repaired wheelchair will be returned to Mr. Villescas on or around October 30, 2015.

    7. My records indicate that Mr. Villescas still has the standard wheelchair that was loaned to him while he awaits the completion of repairs.

(Id. at 1-2.)

  In his declaration, Dr. Greenleaf addresses the claims raised by plaintiff in his pending motion. While plaintiff alleges that he has been denied an air mattress, Dr. Greenleaf states that plaintiff has been issued an air mattress for over one year. While plaintiff alleges that he has been denied narcotic pain medication, Dr. Greenleaf states that plaintiff has been prescribed acetaminophen and morphine for pain. While plaintiff alleges that he has been denied methadone, Dr. Greenleaf states that plaintiff does not have a current need for methadone. While plaintiff alleges that he has been denied a medically necessary lumbar corset, Dr. Greenleaf states that plaintiff does not have a current medical need for this device.[1] While plaintiff alleges that he was denied Boost and yogurt, Dr. Greenleaf states that plaintiff's medical order for Boost and yogurt was renewed for thirty days on September 25, 2015.

  With regard to plaintiff's request to be transferred to an Outpatient Housing Unit ("OHU"), Dr. Greenleaf acknowledges that plaintiff has been on an OHU waitlist for transfer for one year. Dr. Greenleaf states that in his opinion, plaintiff's medical needs are being addressed appropriately in the CTC.

  With regard to plaintiff's request for his personal wheelchair, according to the declaration of H. Mueller, plaintiff should have possession of his personal wheelchair by the time he receives

---

[1] Plaintiff also alleges that he has been denied a lumbar orthosis. The undersigned understands a lumbar orthosis and a lumbar corset to be similar devices. They are both back braces.

these findings and recommendations.

Based on the information contained in the declarations of Dr. Greenleaf and H. Mueller, the undersigned finds that plaintiff has not demonstrated that he will likely suffer irreparable harm if injunctive relief is not granted. Plaintiff has not provided expert evidence countering the expert evidence presented by the Office of the Attorney General demonstrating that plaintiff is receiving adequate medical care. However, if plaintiff's wheelchair has not been returned to him by the time he receives these findings and recommendations, he shall notify the court. In addition, Dr. Greenleaf states that plaintiff's medical needs are being appropriately addressed in the CTC. If plaintiff is removed from the CTC, he may refile his motion for injunctive relief alleging inadequate medical care.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall serve these findings and recommendations on Deputy Attorney General Martha Ehlenbach; and

IT IS HEREBY RECOMMENDED that plaintiff's motion for a temporary restraining order (ECF No. 11), and plaintiff's supplemental briefing in support of this motion (ECF No. 17), be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 30, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Vill1861.tro