1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALBERTO VILLESCAS,                        No.  2:15-cv-1861 TLN DB P

12              Plaintiff,

13        v.                                   FINDINGS & RECOMMENDATIONS

14   RAFAEL MIRANDA, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. §

18   1983.  In his September 2, 2015 complaint, plaintiff alleges defendants demonstrated deliberate

19   indifference to his medical needs in violation of his Eighth Amendment rights.  On January 28,

20   2016, defendants R. Lankford, Bonnie Lee, J. Lewis, Thomas J. Mahoney, Gerri Milliken, J.

21   Smith, and Dorothy Swingle moved to dismiss plaintiff's complaint on the grounds that it fails to

22   state a claim for relief against each defendant and that each is entitled to qualified immunity.

23   Plaintiff opposes the motion with respect to defendants R. Lankford, Bonnie Lee, J. Lewis,

24   Thomas J. Mahoney, and Dorothy Swingle.  Plaintiff dismisses his claims against defendants

25   Smith and Milliken.  (See ECF No. 48 at 9:1-4).  For the reasons set forth below, this court

26   recommends defendants' motion be granted in part and denied in part.

27   ////

28   ////

                                              1

# BACKGROUND

At the time he filed his complaint, plaintiff was detained at High Desert State Prison ("HDSP").[1]  Plaintiff is a T12 paraplegic with chronic decubitus ulcers, commonly known as pressure sores.  (Compl. (ECF No. 1) at 4-5.)  In his complaint, he alleges that defendants have intentionally denied and interfered with plaintiff's medical care by, among other things, depriving him of his air mattress, a back brace called a Lumbar Sacral Orthosis ("LSO"), and narcotic pain medications, despite prior medical orders from pain management specialists and neurosurgeons.

The court ordered service of the complaint on all defendants:   E. Ehrman, R. Lankford, Bonnie Lee, J. Lewis, Thomas J. Mahoney, Gerri Milliken, Rafael Miranda, J. Smith, and Dorothy Swingle.  (ECF No. 12.)  On January 13, 2016, defendant Miranda filed an answer. (ECF No. 35.)   On January 28, defendants Lankford, Lee, Lewis, Mahoney, Milliken, Smith, and Swingle filed the present motion to dismiss.[2]  In his opposition to the motion, plaintiff dismisses his claims against defendants Smith and Milliken.  (ECF No. 48 at 9:1-4.)  The court therefore considers only whether plaintiff has stated cognizable claims against defendants Lankford, Lee, Lewis, Mahoney, and Swingle.

# ALLEGATIONS IN THE COMPLAINT

## I.     Plaintiff's Medical History

Plaintiff is a T12 paraplegic, apparently as the result of a failed surgery in 2005 and a subsequent fall.  Plaintiff was incarcerated at that time and appears to have been incarcerated consistently since then.  Plaintiff was prescribed a back brace repeatedly during 2005 and 2006. (Complaint (ECF No. 1) ¶ 18.)  He states that in 2009, a neurosurgeon recommended a "lumbar

---

[1] Plaintiff filed a change of address dated December 31, 2015 showing that he is now housed at the California Medical Facility at Vacaville. (See ECF No. 31.)

[2] The summons issued to E. Ehrman was returned unexecuted because "there is no such person at CCHCS [California Correctional Health Care Services] by the name of E. Ehrman." (ECF No. 51.)  On June 10, 2016, plaintiff was instructed to provide additional information regarding E. Ehrman if he wished to serve him.  (ECF No. 52.)  Plaintiff was required to provide a completed service form within 60 days.  (Id.)  He has not done so.  Plaintiff is again warned that his failure to complete the service forms for E. Ehrman will result in a recommendation that E. Ehrman be dismissed without prejudice from this action.

2

corset" and he was prescribed a corset later that year. (Id. ¶¶ 22-24, 26.)  Again in 2011, doctors prescribed the corset.  (Id. ¶¶ 28, 29.)   In 2013, an orthotics specialist issued plaintiff an LSO to replace the lumbar corset.  (Id. ¶ 34.)

Plaintiff alleges he was "almost continuously prescribed" pain medication for his chronic and substantial pain, including Fentanyl patches, Vicodin, and Morphine.  (Id. ¶ 19.)  In 2009, plaintiff was taken to a pain clinic and was prescribed morphine or methadone.  (Id. ¶¶ 20-21.)

Plaintiff states that he was first seen for pressure sores in 2009.  (Id. ¶ 25.)  In late 2011, plaintiff was seen by doctors for pressure sores in his lower back.  (Id. ¶ 21.)  Plaintiff alleges that his health care records show a history of recurrent pressure sores in his lower back.  (Id. ¶ 32.)  In 2012 and 2013, doctors prescribed an air mattress for the prevention and treatment of pressure sores.  (Id. ¶ 33.)

## II.        Plaintiff's Transfer to HDSP

On August 29, 2013, plaintiff was transferred from Pleasant Valley State Prison to HDSP. (Id. ¶ 35.)  Upon arrival, plaintiff was told to surrender his medical appliances, including his air mattress and LSO, which unnamed custody staff told plaintiff was not allowed at HDSP.  (Id. ¶ 36.)

Defendant Miranda, a physician's assistant, explained to plaintiff that he could not have these items at HDSP because inmates hide or make weapons with them.  (Id. ¶ 40.)  Defendant Miranda also told plaintiff that HDSP rarely prescribed narcotics because inmates sell or abuse them.  (Id.)   Defendant Miranda documented "No Medical Need" for methadone and "Not Medically Necessary" for the LSO and the air mattress "without examining plaintiff or [his medical] records."  (Id. ¶ 42.)

## III.        Plaintiff's Appeal Log No. HDSP-HC-13027479

Plaintiff submitted a grievance, healthcare appeal log number HDSP-HC-13027479, on August 30, 2013, regarding the surrender of his medical equipment and discontinuation of his narcotic medication by defendant Miranda.  (Compl. ¶¶ 15, 43; Ex. A to Dfts' Oppo.[3])  Plaintiff

---

[3] In considering a Rule 12(b)(6) motion, a district court generally may not consider material beyond the complaint.  Intri-Plex  Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052

1    stated that because he had previously been approved for an air mattress and lumbar corset based

2    on the ADA and medical necessity, and because a Pain Management Committee had prescribed

3    him methadone, the decision to disallow these items was illegal.  (Ex. A at pp. 1, 3.)

4          Defendant Dr. Lankford interviewed plaintiff on September 18, 2013 in response to

5    plaintiff's grievance.  (Compl. ¶ 45; Ex. B at p. 1.)  According to plaintiff, Dr. Lankford

6    interviewed him for only two to five minutes, without examining him.  (Compl. ¶ 45.)  He told

7    plaintiff an air mattress and LSO were not allowed at HDSP and that he doubted plaintiff was in

8    pain and did not want to prescribe a narcotic "because they kill."  (Id.)

9          According to the institution's response to plaintiff's appeal, Dr. Lankford found plaintiff

10   had no signs or symptoms of withdrawal or acute pain, and the two had a "long discussion about

11   the dangers of 150 mg morphine or methadone."  (Ex. B at pp. 1-2.)  Dr. Lankford also noted that

12   because plaintiff had no active ulcers, there was no medical necessity for an air mattress, but he

13   did approve an egg-crate mattress for plaintiff.  (Id.)  Additionally, based on a "review of medical

14   literature," which provided "no evidence for back corsets," Dr. Lankford determined that there

15   was no medical need for a back brace.  (Id.)

16         In his first level appeal, plaintiff stated that Dr. Lankford did nothing more than interview

17   him for several minutes before denying his requests to keep three of his previously prescribed

18   treatments.  Based on Dr. Lankford's findings, on September 27, 2013, defendant Dr. Lee denied

19   plaintiff's grievance at the first level of review.  (Compl. ¶ 47; Ex. B at pp. 1-2.)  Dr. Lee found

20   that plaintiff's treatment should be based on his current medical needs, as determined by his

21   current medical provider, "not on the basis of previous orders of other medical facilities or staff."

22
     (9th Cir. 2007).  However, there are exceptions to this general rule.  Under the "incorporation by
23   reference" doctrine, the court may consider "'documents whose contents are alleged in a
     complaint and whose authenticity no party questions, but which are not physically attached to the
24   [plaintiff's] pleading.'"  Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012)
     (quoting  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005)).  "A court 'may treat such a
25   document as part of the complaint, and thus may assume that its contents are true for purposes of
     a motion to dismiss under Rule 12(b)(6).'"  Id. (quoting United States v. Ritchie, 342 F.3d 903,
26   908 (9th Cir. 2003)). The exhibits attached to defendants' opposition are copies of plaintiff's
27   health care appeals, which plaintiff references in his complaint.  Plaintiff does not contest the
     accuracy of these copies so the court accepts their validity under the incorporation by reference
28   doctrine.

                                          4

1    (Ex. B at p. 2.)  Dr. Lee stated that the denial was based on a review of plaintiff's appeal and his

2    unit health record.  (Id.)   However, Dr. Lee referenced plaintiff's health record only when noting

3    that it did not show evidence of a wool allergy.

4         Plaintiff submitted his grievance to the second level of review on October 14, 2013.

5    (Compl. ¶ 49; Ex. A at p. 2.)  Plaintiff claimed that his visit with Dr. Lankford lasted less than

6    two minutes, and that Dr. Lankford was not an adequate medical provider because he was biased

7    against prescribing pain medications.  (Ex. A at pp. 2, 4.)  Defendant Dr. Swingle reviewed

8    plaintiff's unit health records and the interview with Dr. Lankford, and responded to plaintiff's

9    request for second level review on December 6, 2013.  (Compl. ¶ 50; Ex. C at pp. 1, 2.)  Dr.

10    Swingle noted that plaintiff  had been seen again by Dr. Lankford on October 10, 2014 and his

11    medical accommodations were updated at that time.  Dr. Swingle noted that plaintiff had

12    numerous accommodations, including the approval of an egg crate mattress, but that an air

13    mattress and back brace were not indicated.  (Ex. C at pp. 2-3.)  Dr. Swingle also stated that if

14    those medical appliances were medically necessary, they would be provided.  (Id. at p. 3.)  Dr.

15    Swingle denied plaintiff's request for methadone or morphine, and explained that it had been

16    determined that the risks associated with these narcotics outweighed any potential benefit of

17    prescribing them to plaintiff.  (Id.)  Dr. Swingle reminded plaintiff that Dr. Lankford prescribed

18    plaintiff Tylenol (acetaminophen) to address his chronic low back pain.  (Id.)

19         Plaintiff submitted his grievance to the third level of review on January 2, 2014, and

20    reiterated his complaints from the first two levels of review.  (Compl. ¶ 51; Ex. A at pp. 2-3.)

21    Deputy Director of Policy and Risk Management Services, defendant J. Lewis, responded to

22    plaintiff's request for a third level review on March 6, 2014.[4]  (Compl. ¶ 52; Ex. D.)  Deputy

23    Director J. Lewis found that plaintiff's records did not indicate a medical need for an air mattress

24    or back brace, and that the risks outweighed the benefits of having narcotic pain medications.

25    (Ex. D at pp. 2-3.)  J. Lewis denied plaintiff's appeal at the third level.  (Id.)

26

[4] Plaintiff alleges defendant Ehrman, along with defendant Lewis, "approved all previous
27   Responses."  (Compl. ¶ 52.)  As stated above, plaintiff has not served his complaint upon
defendant Ehrman.  The court also notes that the response to plaintiff's third level review is
28   signed only by defendant Lewis.  (Ex. D at p. 3.)

1    Plaintiff claims that he ground his teeth so much in response to his chronic pain that he

2    cracked a tooth and on March 2, 2014 had that tooth removed. (Compl. ¶ 53.)  Plaintiff saw Dr.

3    Lankford again on March 18, 2014. (Id. ¶ 54.)   He explained his problems caused by pain and

4    again asked an air mattress, LSO, and narcotic pain medications. (Id.)  In response, Dr. Lankford

5    recommended that plaintiff lose weight, and approved a trapeze bar to assist plaintiff with

6    transfers and to avoid sores. (Id. ¶ 55.)

7    According to plaintiff's complaint, these actions by defendants Dr. Lankford, Dr. Lee, Dr.

8    Swingle, and J. Lewis all constituted deliberate indifference to his serious medical needs in

9    violation of the Eighth Amendment. (Compl. ¶¶ 83-128.)  Plaintiff seeks declaratory relief,

10   injunctive relief, compensatory and punitive damages, in addition to costs and fees. (Id. at pp. 15-

11   16.)

12   **IV.  Plaintiff's Appeal Log No. HDSP-HC-14028090**

13   In early April 2014, plaintiff began noticing some bleeding from his low back area.

14   (Compl. ¶ 56.)  On April 15, 2014, plaintiff was seen by Nurse Practitioner L. Schmidt, and then

15   submitted a healthcare appeal, log number HDSP-HC-14028090. (Id.  ¶¶ 57-58; Ex. F at

16   pp. 3, 5.)  In that grievance, plaintiff complained that Nurse Practitioner L. Schmidt denied his

17   request for an air mattress because HDSP does not allow them on the yard. (Ex. F at p. 3.)  He

18   stated that Nurse Practitioner Schmidt told him he could only have one if housed in the

19   Correctional Treatment Center ("CTC"). (Id.)  Plaintiff claimed this was discrimination based on

20   his disability because he would be denied services, activities, programs, and benefits if forced to

21   go to CTC. (Id.)

22   Nurse Schmidt interviewed and examined plaintiff on May 2, 2014 in response to the

23   healthcare grievance. (Compl. ¶ 59.)   On May 27, 2014, defendant Dr. Lee responded to

24   plaintiff's healthcare grievance. (Compl. ¶ 60; Ex. G at p. 2.)  Dr. Lee explained that the only

25   place plaintiff could have an air mattress at HDSP was at the CTC and noted that plaintiff did not

26   want to go there. (Ex. G at p. 2.)  Dr. Lee also noted that plaintiff was receiving wound care and

27   the wound in his coccyx area was healing. (Id.)  Dr. Lee denied plaintiff's request for an air

28   mattress in Facility C at the first level of review. (Id.)

1    Plaintiff submitted his grievance for a second level review on June 15, 2014, and

2    reiterated his request for an air mattress, or in the alternative, to be transferred to another

3    institution if he could not have an air mattress in Facility C at HDSP.  (Compl. ¶ 61; Ex. F

4    at p. 2.)  Plaintiff also stated that Nurse Practitioner Schmidt agreed that an air mattress was

5    necessary.  (Ex. F at p. 2.)  He further stated that the "wound in my coccyx area continues to

6    come and go, on and off, day by day, every few days.  It improved with the help of the wound

7    care nurse but the problem has not been eliminated.  I am forced to continue suffering."  (Id. at 4.)

8    On July 28, 2014, the California Correctional Health Care Services (CCHCS) Chief

9    Executive Officer, defendant T. Mahoney, responded to plaintiff's request for second level review

10   of his grievance.  (Compl. ¶ 62; Ex. H at p. 3.)  Plaintiff's unit health records were reviewed, and

11   plaintiff's requests were denied.  (Ex. H. at p. 3.)  Mahoney stated that on May 27, 2014, plaintiff

12   had been seen by Nurse Practitioner Schmidt who noted that the wound in his coccyx area had

13   "been resolved" and his coccyx area was "entirely clear of abrasions, tears and redness."  (Id. at p.

14   2.)  However, Mahoney did not address plaintiff's statement in his appeal, made over two weeks

15   later, that he was continuing to have problems with his wounds in this area.  Mahoney explained

16   that medical transfers are based on medical necessity, and that because necessary medical

17   treatment was available to plaintiff at HDSP, his request to transfer was denied, and because his

18   medical records reflected no change in his condition, his request for an air mattress was similarly

19   denied.  (Id.)

20   On August 5, 2014, plaintiff saw a nurse because his sores "had been bleeding for about

21   10 days and had discharge."  (Compl. ¶ 63.)

22   Plaintiff submitted his healthcare grievance to the third level of review on August 10,

23   2014, and asked again for an air mattress and to be transferred if HDSP would not allow him to

24   have an air mattress on Facility C.  (Id. ¶ 64; Ex. F at p. 2.)  He reiterated that he felt being forced

25   to go to CTC due to the need for an air mattress was discriminatory.  (Ex. F at  pp. 2, 5.)  He also

26   stated that his wounds in his coccyx area were not completely healing and that he had been seen

27   by a nurse again on August 5 about them.  (Id.)  Plaintiff alleges that for the two months

28   ////

7

following submission of this third level appeal, he was "provided almost constant monitoring and treatment of decubs [pressure sores] in an effort to get sores healed." (Compl. ¶ 65.)

On October 2, 2014, Nurse Practitioner Schmidt determined that plaintiff should have an air mattress, which would require housing in an outpatient hospital unit. (Id. ¶ 66.)   On October 7, plaintiff was moved to the CTC and issued an "air flow mattress for the treatment and prevention of decubs."

On November 4, 2014, defendant J. Lewis, the Deputy Director of Policy and Risk Management Services for CCHCS, reviewed plaintiff's grievance at the third level, and noted that plaintiff's medical records had been reviewed by licensed clinical staff. (Ex. I at p. 2.)  Plaintiff's medical records showed he had been seen for his sores and that his primary care physician recommended continued wound care. (Id.)  However, plaintiff's request for an air mattress in Facility C was again denied because plaintiff already had an air mattress while he was housed in the CTC. (Id.)  Because J. Lewis determined that plaintiff was receiving adequate medical attention for his condition, he felt that no intervention at the Director's Level of Review was necessary, and no changes or modifications were made to the previous decisions.  (Id.)

According to plaintiff's complaint, these actions by defendants Dr. Lee, T. Mahoney, and J. Lewis all constituted medical deliberate indifference because they "allow[ed] security reasons to overrule medical needs" and otherwise disregarded his serious medical needs in violation of the Eighth Amendment. (Compl. at pp. 10-15.)  Plaintiff seeks declaratory relief, injunctive relief, and compensatory and punitive damages, in addition to costs and fees. (Id. at pp. 15-16.)

Specifically, plaintiff alleges all defendants' actions caused him to suffer chronic severe pain which affects plaintiff's daily activities, stabbing pain when he hits bumps in his wheel chair, broken teeth as a result of grinding his teeth in response to the pain, the removal of two molars, loss of sleep, recurrent pressure sores, bleeding, scarring on his buttocks and sacral area, weakened skin over that area, difficulty writing or reading because he is required to constantly change position to avoid pressure sores, and an injury to his right wrist that causes pain and sporadic inability to hold a pen or utensil,    (Compl. ¶¶ 78-81, 94, 107, 121.)

////

1

**LEGAL STANDARDS**

2

**I.      Rule 12(b)(6) Standards**

3          Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for

4    "failure to state a claim upon which relief can be granted."  In considering a motion to dismiss

5    pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint in

6    question, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), and construe the pleading in the light most

7    favorable to the plaintiff.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of</u>

8    <u>Riverside</u>, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive dismissal for failure to state a

9    claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or

10   "a formulaic recitation of the elements of a cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>,

11   550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of

12   action, supported by mere conclusory statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,

13   678 (2009).  Furthermore, a claim upon which the court can grant relief must have facial

14   plausibility.  <u>Twombly</u>, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

15   factual content that allows the court to draw the reasonable inference that the defendant is liable

16   for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.

17          A motion to dismiss for failure to state a claim should not be granted unless it appears

18   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

19   entitle him to relief.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  In general, pro se

20   pleadings are held to a less stringent standard than those drafted by lawyers.  <u>Haines v. Kerner</u>,

21   404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  <u>Bretz</u>

22   <u>v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

23   interpretation of a pro se complaint may not supply essential elements of the claim that were not

24   pled.  <u>Ivey v. Board of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  In ruling

25   on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only

26   allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

27   subject to judicial notice."  <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899

28   (9th Cir. 2007) (citation and quotation marks omitted).

9

1      **II.**     **Deliberate Indifference Standards**

2         To maintain an Eighth Amendment claim based on inadequate medical care, a plaintiff

3 must allege facts showing the defendant acted with deliberate indifference to serious medical

4 needs.  See Estelle v. Gamble, 429 U.S. 97 (1976).  In the Ninth Circuit, a deliberate indifference

5 claim has two components.  First, "the plaintiff must show a serious medical need by

6 demonstrating that failure to treat a prisoner's condition could result in further significant injury

7 or the unnecessary and wanton infliction of pain."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

8 2006) (internal quotation marks and citations omitted).  Examples of a serious medical need

9 include "'[t]he existence of an injury that a reasonable doctor or patient would find important and

10 worthy of comment or treatment; the presence of a medical condition that significantly affects an

11 individual's daily activities; or the existence of chronic and substantial pain.'"  Colwell v.

12 Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting McGuckin v. Smith, 974 F.2d 1050,

13 1059-60 (9th Cir. 1992), overruled on other grounds by WMX Techs, Inc. v. Miller, 104 F.3d

14 1133 (9th Cir. 1997) (en banc)).

15         Second, a plaintiff must show the defendant's response to the need was deliberately

16 indifferent.  This second prong "is satisfied by showing (a) a purposeful act or failure to respond

17 to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Jett, 439

18 F.3d at 1096.  The denial, delay, or intentional interference with medical treatment may amount to

19 indifference.  Id.  In addition, indifference may be shown "by the way in which prison physicians

20 provide medical care."  Id.  However, the indifference must be substantial.  Mere "'indifference,'

21 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter

22 Lab., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  In addition, mere

23 differences of opinion between a prisoner and prison medical staff or between medical

24 professionals as to the proper course of treatment for a medical condition do not give rise to a §

25 1983 claim.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891

26 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  To

27 establish that a difference of opinion amounted to deliberate indifference, the prisoner "must

28 show that the course of treatment the doctors chose was medically unacceptable under the

circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health."  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see also Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's awareness of need for treatment followed by his unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference).

Finally, plaintiff must show an actual connection between the challenged conduct of a specific defendant and plaintiff's alleged constitutional deprivation.  See Monell v. Dept. of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory personnel are thus generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior.  Therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey, 673 F.2d at 268.

### III.    Qualified Immunity Standards

Government officials are immune from civil damages "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must consider the following questions, in the order most appropriate to the circumstances of the particular case: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident.  Pearson v. Callahan, 555 U.S. 223, 236 (2009) (citing and overruling in part Saucier v. Katz, 533 U.S. 194, 201 (2001)).

1
2
3
4

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

5   <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (per curiam ) (citations and internal quotation marks

6   omitted).

7   **ANALYSIS**

8   There is no dispute that plaintiff is a T12 paraplegic with a history of decubitus ulcers. It

9   is also not disputed that before arriving at HDSP, plaintiff had been prescribed narcotics and a

10   back brace for pain, and an air mattress to reduce the occurrence of pressure sores. Plaintiff has

11   alleged he suffered pain and sleeplessness as a result of the discontinuation of these three medical

12   treatments when he arrived at HDSP. Plaintiff alleges that HDSP medical staff ignored his

13   medical needs and also denied him an air mattress, back brace, and narcotics because of HDSP

14   policies disallowing those appliances in his housing area at HDSP and prohibiting the prescription

15   of narcotic medications.

16   **I.      Dr. Lankford - Appeal Log No. HDSP-HC-13027479**

17   Construing plaintiff's allegations in the light most favorable to him for purposes of the

18   pending motion, Dr. Lankford first interviewed plaintiff extremely briefly almost three weeks

19   after plaintiff's admission to HDSP. Dr. Lankford did not conduct a physical or visual

20   examination of plaintiff. However, plaintiff alleges that Dr. Lankford did have his medical

21   records so should have been aware of his medical problems and the recommendations of prior

22   doctors. Based on this information, Dr. Lankford determined that because plaintiff did not have

23   active pressure sores, an air mattress was not necessary. In addition, Dr. Lankford refused to

24   allow the back brace because a "review of the medical literature" showed that it was not indicated

25   for plaintiff's medical problems. Dr. Lankford doubted plaintiff's complaints of pain and

26   prescribed Tylenol.

27   Plaintiff also complains of Dr. Lankford's conduct when he saw plaintiff in March 2014. Dr.

28   Lankford again refused to allow an air mattress, back brace, or narcotic medications. He

1    recommended that plaintiff lose weight, and approved a trapeze bar to assist plaintiff with

2    transfers to avoid sores.  Shortly thereafter, plaintiff noticed that he was bleeding from his lower

3    back and was treated for a pressure sore there.

4         Plaintiff has alleged that despite some knowledge of plaintiff's physical condition, pain, and

5    history of pressure sores, Dr. Lankford discontinued medical care plaintiff had consistently

6    received for several years without examining him.  It appears that Dr. Lankford again discounted

7    plaintiff's complaints of pain at the March 2014 appointment.  This is sufficient to allege a claim

8    of deliberate indifference to plaintiff's serious medical needs under the Eighth Amendment.

9    **II.      Drs. Lee and Swingle – Appeal Log No. HDSP-HC-13027479**

10        Plaintiff alleges Drs. Lee and Swingle essentially rubber-stamped Dr. Lankford's

11   determinations.  Generally, denying a prisoner's administrative appeal does not cause or

12   contribute to the underlying violation.  See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007);

13   Hernandez v. Cate, 918 F. Supp. 2d 987, 1018 (C.D. Cal. 2013).  The review assessment of a

14   correctional medical official may constitute deliberate indifference only if the official was aware

15   that the underlying challenged medical decision caused plaintiff "further significant injury or the

16   unnecessary and wanton infliction of pain," and the official purposefully failed to pursue an

17   appropriate medical remedy.  Farmer v. Brennan, 511 U.S. 825, 842 (1994); see also Jett, 439

18   F.3d at 1098 (prison officials, particularly those in administrative positions, may be "liable for

19   deliberate indifference when they knowingly fail to respond to an inmate's requests for help").

20   This rule is especially true where the reviewer is medically trained.  See, e.g., Thomas v.

21   Nangalama, No. 2:10-cv-1295 JAM EFB P, 2012 WL 1281792, *7 (E.D. Cal. Mar. 26, 2013);

22   Pogue v. Igbinosa, No. 1:07-cv-1577 GMS, 2012 WL 603230 (E.D. Cal. Feb. 23, 2012)

23   (medically-trained individuals who are made aware of serious medical needs through reviewing a

24   prisoner's grievance may be liable for failure to treat those needs).

25        Here, plaintiff states that defendants Drs. Lee and Swingle simply approved the course of

26   action determined by Dr. Lankford, "without conducting an interview or an examination of

27   Plaintiff."  (Compl. ¶¶ 47, 50.)  While that may be insufficient on its own to establish Eighth

28   Amendment liability, the facts before the court show that Lee and Swingle knew about plaintiff's

1   medical history and knew that he was claiming to be in continuing pain.  Plaintiff's complaints at

2   all levels of review were that he continued to be in significant pain due to the denial of his

3   medical equipment and narcotic medication.  Therefore, taking plaintiff's assertions in the light

4   most favorable to him, the denial of his first and second level appeals caused him to be in pain.

5   The court finds these facts sufficient to make out Eighth Amendment claims against Drs. Lee and

6   Swingle with respect to plaintiff's first grievance.

7   **III.      Dr. Lee – Appeal Log No. HDSP-HC-14028090**

8          In his second grievance, plaintiff focused on the denial of an air mattress in his then-current

9   housing at HDSP.  Plaintiff claimed that Nurse Practitioner Schmidt had "agreed that an air

10  mattress was needed."  (Ex. F to Oppo. at 2.)  Plaintiff's complaint at this point appeared to be

11  that he did not want to be transferred to the CTC in order to have an air mattress.  He alleged that

12  HDSP's policy barring air mattresses in the general population was discriminatory.  In response

13  to his appeal, Dr. Lee re-affirmed that plaintiff could not have an air mattress in his current

14  housing and noted that plaintiff  "did not want to go into the CTC."  (Ex. G at 1.)   It is not clear

15  just what plaintiff is alleging Dr. Lee could or should have done differently because her decision

16  was based on HDSP policy regarding the use of air mattresses.  Plaintiff does not allege Dr. Lee

17  was responsible for that policy or had the ability to change that policy.  Nor does plaintiff allege

18  that Dr. Lee otherwise discriminated against him based on his disability.[5]  Plaintiff does not now

19  make out a claim of deliberate indifference by Dr. Lee with respect to her denial of his appeal at

20  the first level of review for this second grievance.

21  **IV.      Chief Executive Officer Mahoney - Appeal Log No. HDSP-HC-14028090**

22         Plaintiff's allegations against defendant Mahoney are somewhat different.  Plaintiff's

23  allegation in his complaint is only that defendant Mahoney denied his appeal.   This is

24  insufficient, on its own, to show Mahoney was deliberately indifferent to plaintiff's serious

25  medical needs.  See Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (The fact that an

26  administrator signed the denial of the second level appeal does not mean he knew about the

27

28  [5] The court notes that plaintiff does make an equal protection claim based on his allegations of discriminatory treatment.

14

1   plaintiff's complaints.).  However, the facts this court may consider show that Mahoney had more

2   involvement than the simple denial of plaintiff's appeal.  Plaintiff's appeal to Mahoney includes

3   complaints that the wound in his coccyx area continued to be a problem and that he continued to

4   be in pain.  Unlike Dr. Lee, Mahoney did not appear to rely on the policy forbidding use of an air

5   mattress in the general population at HDSP.  Rather, Mahoney found plaintiff's medical situation

6   had improved and denied his request for an air mattress.

7        It is unclear from the record whether Mahoney is a medical professional.  He is identified as

8   the CEO of California Correctional Health Care Services.  (Ex. H at 3.)  Considering plaintiff's

9   claim in the light most favorable to plaintiff, the record shows that Mahoney made independent

10  findings about plaintiff's needs based on his review of plaintiff's medical records.  That is

11  sufficient, at this stage, to show Mahoney exercised independent medical judgment to deny

12  plaintiff's appeal.  See Norman v. Riaz, No. 2:15-cv-1346 AC P, 2016 WL 3748711, **6-7 (E.D.

13  Cal. June 10, 2016).  Accordingly, this court finds plaintiff has made out a claim that Mahoney

14  was deliberately indifferent to his serious medical needs.

15       **V.      Deputy Director Lewis**

16       Defendant Lewis denied both of plaintiff's appeals at the third level of review.  Lewis is the

17  Deputy Director of Policy and Risk Management Services.  Unlike defendant Mahoney, it does

18  not appear that defendant Lewis personally reviewed plaintiff's medical records.  Rather, the

19  decisions issued by defendant Lewis state that plaintiff's appeal file and health records "were

20  reviewed by licensed clinical staff."  (Ex. D to Oppo. at 1; Ex. I at 1.)  Defendant Lewis was only

21  deliberately indifferent to plaintiff's serious medical needs if he subjectively knew that plaintiff

22  had continuing pain.  Because plaintiff bases his claims against defendant Lewis solely on

23  Lewis's denial of his third level appeals, plaintiff has failed to show Lewis personally knew his

24  medical history or claims of continuing pain.  See Peralta, 744 F.3d at 1086.  In addition, because

25  Lewis does not appear to be a medical professional, he was "justified in believing that the

26  prisoner [was] in capable hands."  Pogue, 2012 WL 603230, *9; Wilson v. Woodford, No. 1:05-

27  cv-0560 OWW SMS (PC), 2009 WL 839921, *7 (E.D. Cal. Mar. 30, 2009) (citing Greeno v.

28  Daley, 414 F.3d 645, 656 (7th Cir. 2005)).  Without medical training, Lewis did not exercise

15

1  independent medical judgment when he denied plaintiff's appeal, nor can he be considered to

2  have understood and disregarded an excessive risk to plaintiff's health.  See Norman, 2016 WL

3  3748711, **6-7.  Therefore, plaintiff fails to allege Lewis acted with deliberate indifference to a

4  serious medical need or violated his rights to equal protection of the laws.

5       **VI.    Qualified Immunity for All Defendants**

6       Defendants Lankford, Lee, Thomas J. Mahoney, and Swingle have failed to show, at this

7  juncture, that their conduct is protected by qualified immunity.[6]  At the times in question, it was

8  clearly established that prison medical providers must provide constitutionally adequate medical

9  care.  See Estelle, 429 U.S. at 97; Farmer, 511 U.S. at 837.  A reasonable medical provider should

10  have known that disregarding a prisoner's serious medical needs would violate the Eighth

11  Amendment.  Id.  With respect to the second part of the qualified immunity test - whether the

12  alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's

13  conduct violated a statutory or constitutional right – plaintiff has made a sufficient showing, as

14  described above, that these defendants violated his constitutional rights.  Like his Eighth

15  Amendment claims themselves, the issue of qualified immunity is too fact-dependent to be

16  resolved at this point in the litigation.  In the absence of a fully developed record, qualified

17  immunity does not apply where the facts, construed in the light most favorable to the party

18  asserting the injury, show a violation of a clearly established constitutional right of which a

19  reasonable official should have been aware.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

20       **LEAVE TO FILE AN AMENDED COMPLAINT**

21       This court will recommend that plaintiff be granted leave to file an amended complaint to

22  cure the deficiencies in his present complaint identified above.  Should plaintiff choose to do so,

23  he is advised that the allegations of that amended complaint must clearly identify how each

24  defendant's alleged misconduct resulted in a deprivation of plaintiff's constitutional rights.  See

25  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  In any amended complaint he may elect to file

26  plaintiff must allege in specific terms how each named defendant is involved.  There can be no

27

28

---

[6] Because the court finds plaintiff has not stated a cognizable Eighth Amendment claim against
defendant Lewis, the court need not consider whether Lewis is protected by qualified immunity.

1  liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a

2  defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. at 369; May v. Enomoto, 633

3  F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743.  Vague and conclusory allegations of

4  official participation in civil rights violations are not sufficient.  Ivey, 673 F.2d at 268.

5      In addition, plaintiff is informed that the court cannot refer to his previously-filed complaint

6  in order to make his amended complaint complete.  Local Rule 220 requires that an amended

7  complaint be complete in itself without reference to any prior pleading.  This is because, as a

8  general rule, an amended complaint supersedes the original complaint.  See Lacey v. Maricopa

9  County Atty's Off., 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc).  Once plaintiff files an

10  amended complaint, the original pleading no longer serves any function in the case.  Therefore, in

11  an amended complaint, as in an original complaint, each claim and the involvement of each

12  defendant must be sufficiently alleged.

13      If the district judge adopts the recommendations set out below and plaintiff chooses not to file

14  an amended complaint, this case will proceed on the following claims in the existing complaint:

15  (1) plaintiff's Eighth Amendment claims regarding Appeal Log No. HDSP-HC-13027479 against

16  defendants Lankford, Lee, and Swingle; (2) plaintiff's Eighth Amendment claim regarding

17  Appeal Log No. HDSP-HC-14028090 against defendant Mahoney; and (3) plaintiff's Eighth

18  Amendment claim against defendant Miranda, which is not a subject of the pending motion.

19                                   **CONCLUSION**

20      For the foregoing reasons, IT IS HEREBY RECOMMENDED that the motion to dismiss

21  (ECF No. 39) be granted in part and denied in part as follows:

22      1.  The allegations in the complaint against defendant Lewis be dismissed without prejudice;

23      2.  The allegations in the complaint regarding defendant  Lee's denial of plaintiff's appeal no.

24          HDSP-HC-14028090 be dismissed without prejudice;

25      3.  The claims in the complaint against defendants Smith and Milliken be dismissed pursuant

26          to Rule 41(a)(1) of the Federal Rules of Civil Procedure;

27      4.  Based on plaintiff's transfer to a new prison (see ECF No. 31), plaintiff's request for

28          injunctive relief be denied as moot;

17

1    5.  The motion to dismiss be denied in all other respects; and

2    6.  Plaintiff be granted leave to file an amended complaint within thirty days of a decision on

3        these findings and recommendations.

4    These findings and recommendations will be submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen after

6  being served with these findings and recommendations, any party may file written objections with

7  the court and serve a copy on all parties. The document should be captioned "Objections to

8  Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

9  filed and served within seven days after service of the objections.  The parties are advised that

10  failure to file objections within the specified time may result in waiver of the right to appeal the

11  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

12  Dated:  November 14, 2016

13

14

15                    DEBORAH BARNES
                      UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22  DLB:9
    DLB1/prisoner-civil rights/vill1861.mtd

23

24

25

26

27

28

18